We're here today asking this court to reverse the decision of a certain court of Cook County, affirming the decision of the Workers' Compensation Commission. Specifically, we're addressing the awarding of an 8D2 and an 8D1 permanent disability award and whether that was proper. Also medical expenses and whether or not they should have been awarded and penalties and of 8D1 and 8D2. This petitioner, Mr. O'Rourke, suffered an original accident on August 22, 2002, 27, 2002. He was moving bricks in a wheelbarrow when he injured his low back. An MRI revealed acute sciatica at L4 and L5. He subsequently underwent a first surgery which addressed L3 and L4. He underwent an FCE and was released to medium duty. He then underwent work hardening which allowed him to return to regular duty on July 10, 2003. After working approximately 10 months, he suffered a second accident when a trench he was working in with a jackhammer partially collapsed. There was no surgery in this case. It was the same treating doctor, Dr. Lim. The diagnosis or the working diagnosis by Dr. Lim was lumbar discectomy L3-4 and L4-5, of course, from the prior injury. Another FCE was performed and once again, Mr. O'Rourke scored at the medium level. There was a discharge diagnosis of post-laminectomy syndrome. And we bring the court's attention to the fact that, of course, the laminectomies were performed after the first injury, but that was the working diagnosis. We contend that at the date of hearing, the two insults to this person's back had become one disability. The commission, when they look at cases, they look to the present condition of ill-being, that is the medical condition on the date of hearing, and not the number of injuries or such. This case involved an arbitrator's award with the same testimony, same evidence, two separate decisions. At the hearing, the petitioner testified that he had pain in his legs, that he had numbness, and that he now had begun grinding his teeth due to pain. He did not distinguish between the two injuries by way of medical testimony, by report, or deposition. What you're saying is we have one condition of ill-being at the time both these cases were presented to the arbitrator? Correct. And that the condition of ill-being is attributable to the same area of the body? And the exact same area of the body. Was there any evidence presented at the hearing that permits a delineation of a separate condition attributable to each accident? No. It's our position that it does not. The question is whether some of the things he testified to were, as I would say, whether he was testifying in present tense, or whether he was talking about, in other words, when he returned to work, or was he talking about sitting at the hearing? And it's our position that he was talking or testifying in the present tense when he was at the hearing, and counsel for Mr. O'Rourke elicited testimony with this question. Could you tell us today how was your back feeling? The responses, as I stated, by Mr. O'Rourke were in the present tense. Mr. O'Rourke's case, as it was presented, was directed at achieving a wage differential award under 8D1. The arbitrator agreed, and he based his awards on the same medical evidence, but he awarded both 20% whole body disability under 8D2 and a wage differential under 8D1. Well, suppose these two cases had not been consolidated for arbitration and had been argued separately. Would that make a difference in your analysis? The only difference it would make if it was separated by a certain period of time were the petitioner's attorneys always ask their clients, what do you notice about yourself today? If we were talking about a different period of time, then I think it might have made a difference. Then it would be consolidated freightways. There wouldn't be any credit. Absolutely. We're not asking for credit. So do we really only reach the result that you argue because they were consolidated for hearing? We reach the result because on the date that they were consolidated for hearing, the testimony could only show that on that particular date, he was unable to return to work and he was suffering from a wage differential. Our Supreme Court has expressed a preference for wage differential awards over schedule awards, and those situations were either as available on 8D1 we're looking for partially incapacitated from pursuing his usual and customary line of employment. Was Mr. O'Rourke so incapacitated? And then the second part of 8D1 is with an impairment in earning power. And that's where they directed their attention towards the impairment in earning power. Whereas 8D2, when Mr. O'Rourke suffers an injury that partially incapacitates him from performing the usual and customary duties of employment, but does not cause an impairment of earning capacity, or if it does, then Mr. O'Rourke has the option to waive it and pursue under 8D2. So the compensation here could be either a percent of the person as a whole or a wage differential. You're suggesting it should be a wage differential? Correct. Under that definition of an 8D2 award, would you be taking the position that the first incident did not qualify necessarily for an 8D2? Because there's no impairment of earnings. Didn't he go back at his usual wage the first time? On the first one, he went back to his regular job, so there would be no 8D1. There would be no wage differential. Right, but were you giving the definition of an 8D2? Both. Okay. 8D2 is the person as a whole, and it has the provision where you can waive a wage differential and accept an 8D2 person as a whole. What is the duplication of the 8D2 and the 8D1? About 50 weeks? I'm sorry, Your Honor. Is the duplication of the 2 award, is it waiting for a period of about 50 weeks? It's 20%, so it's 100 weeks. 100 weeks from when? The 20% whole body disability, if that's Your Honor's question, represents 100 weeks of compensation at the permanency rate. The wage differential is based upon two-thirds of the difference of what he would have been making in his original job at the City of Chicago and what he's making today. Under the first award, he was given TTD through July 19, 2003. Correct. On that date, the 8D2 started to run. Is that correct? That would be the theory if he was entitled to an 8D2, yes. Well, he was given it by the arbitrator. Correct. And that was about 8 months before the second injury. Is that correct? 8 to 10 months. Correct. So we're really talking, the duplication is about 5 to 8 months where he gets both the 8D2 and the 8D1. Well, the 8D1 would be paid based upon the return to work on the second injury. Yes. I have a question about the medical bills. There was an award of $3,242 in medical bills? Yes. What evidence supported it? The petitioner testified that he identified the medical bills. Paid or unpaid? Pardon me? Paid or unpaid? Unclear, Your Honor. And what I asked him was, when's the last time you got a copy of these bills or whatever? Because the bills were dated 2002. Were they marked paid? Some had handwritten marked paid, some did not. And it was unclear as to why. Are the ones that were not marked paid, is there any evidence that the bills were reasonable or necessary from a doctor? Yes, I would say so. So some doctor testified it was all reasonable? No, but based upon the, for instance, some of the treatment that was given on that day, the particular day where the medical bill was. But otherwise, there was no testimony from any doctor about reasonableness or necessity for any of the bills. The, in my brief, I cite some of the cases. Normally, this issue comes up when it's two parts of the body or, but not two different injuries. But that being said, in Freeman Cole, which we cite in our brief, the court ruled that you're entitled to one or the other, but not both. In Galeante, the court said Section 8 prohibits the commission from issuing an award based on person as a whole and wage differential. So what we have, in our opinion, on the day that this award was made, we have a medical condition that cannot be separated between the two injuries. On the day we all sat there, he had disability, which entitled him to a wage differential, and that is all that he had. He did not elect to be compensated under 8D2 during the hearing by waiving 8D1. And therefore, the wage differential award is the only award that we feel is proper. And we would ask that that 8D2, 20% of a man, be reversed. I would just note on medical expenses, as I mentioned to Justice Hoffman, that it's a failure of proof, as far as we're concerned, to prove that those were reasonable, necessary, and unpaid. And on penalties and attorney's fees, I would just state that, as we did in our brief, that there is a distinction between 19L and 19K. 19L is a late fee. 19K needs to show, not simple inadvertence, but some kind of deliberate, vexatious behavior, which I don't think was shown. Thank you, counsel. Thank you. Counsel, please. Good afternoon, Justice. Mr. Cooper, my name is Dan Collins. I'm a law firm of Crow Bond Journal and Given on behalf of Mr. O'Rourke. With respect to this case, I think one of the key points is the consolidation that was taken in this matter. That occurs as a matter of law. The statute specifically says if one of the parties asks for the consolidation, if it's the same employer, then it shall be granted. There is no opportunity for the petitioner to step up and form any type of protest in this matter. With respect to whether or not there's a differentiation in Mr. O'Rourke's medical condition, I submit to the justices that in this case, Mr. O'Rourke, after his first accident, was released by Dr. Lim on July 10, 2003, at full duty. He was given a full-duty release and, in fact, went back to Mercy Works, the City of Chicago's company clinic, on July 31, 2003, and that full-duty release was again noted by them and he was discharged from care at that point. And he went back to work. He went back to work for approximately 10 months. And he worked as a laborer. And he testified that he was doing what I was doing beforehand in that job. So that, I think clearly, that's the best evidence that his medical condition had reached a state of permanency. But for the fact that this new accident occurred, he would have kept on working. He suffered this second accident and as a result of that accident, landed up with permanent restrictions put in place by the doctor. That led to a change of job. They accommodated him as a night watchman at a lesser rate of pay. And it's on that basis that the wage differential was awarded. How do you counter the argument that the evidence at the hearing established only one condition of ill-being? There was not a delineation of a separate condition of ill-being attributable to each separate accident? Well, I think that on the stipulation sheets, there was entered into a stipulation by the parties that there was a causal connection for the ill-being in both of those cases. So that's number one. Number two, I think that there is an argument that's being made here that you can only show the person's condition of ill-being at the time of hearing and strictly at the time of hearing. And I think I've alluded in my brief a couple of times, that creates some kind of awkward situations whereby if I suffered an injury at age 20 and chose not to actually try my case until age 60, that all of a sudden what I'm testifying to after 40 years would somehow be the standard that would be applied to that case to determine my permanency level seems a little extreme to me. And in this case, again, where I would go back to, or I think the Commission considered it, is the fact that in this case he was given a full-duty release to go back to his job. And in fact, he did go back to his job and was able to perform a heavy-duty job as labor. And I think that's the best evidence. So he had no impairment then, right? He had some impairment and he testified to the fact that as he could recall back at that time he was having some issues with his legs. He certainly testified that after the second accident that he noticed that the numbness in his legs was worse. It was a worsened condition. With respect to the imposition of penalties and fees, I think that the problem in this situation is the City offered him a night watchman position. They paid him his regular, you know, the lower salary, but they didn't pay the wage differential and they didn't pay it until March 31, 2006. So you have from May 2, 2005 through March 31, 2006. And there was never any explanation offered as for the delay in benefits. I think that's what the Commission picked up on. Counsel, let me ask you this. What specific case law authority can you call to our attention that supports an award in this case under both 8D1 and Section 8D2? There's not a case specifically on point. I cited to the consolidated freight waste case for the suggestion that with BACs there are no prior credits to be given. And with respect to the cases that the other side has cited to, I note that in those cases in General Electric, Galiante, Freeman United, those are all cases where there is just simply one accident. One accident, and the person there is seeking recovery under the two theories, man as a whole and a wage differential. The only thing that can really be pointed to in Beelman Trucking as Mr. Cooper had pointed out in his brief, the Supreme Court said that they were okay with an award of a statutory total disability along with a permanent award under Section 8E for the damage to the arms. Again, that's not specifically related to our case because again, that's just one simple accident. But the reality of the situation is if this man's first case had been tried, we wouldn't be here today. There would have been an award. The award that would have been justified in that situation would have been an 8D2 because he suffered an injury to his back. They would have contemplated the fact that he had returned to work and gone on to work in the full performance of his job and so they would have calculated that when they did the percentages to be awarded and then we would have had the second case some ten months later, a brand new accident and Well, we have to decide the case as the facts are and the record is in this case. Are you suggesting we can sort of go off and decide that, well, had this and this happened, therefore, we're going to reach a certain result based upon what could have happened? Not at all. Not at all. But I'm saying if there's no prior guidance then we can only look to certain hypotheticals and try and judge those. In this case, the Commission found that basically there were two separate and distinct cases and as such they were able to make an award for an 8D2 in the first case and I suspect they based that largely on the fact that he was able to go back to work for a full duty return to work and contemplated the fact that he had undergone two laminectomy surgeries so that an award of 20% of a man is certainly consistent with that and then they took into account the facts of the second case which is that he now after the second injury suffered permanent restrictions that precluded him from going back to his job. The situation had changed. And as such I think that's what the Commission considered when making their arraignment. Do we still have the same injury though? No. No, we don't and I suggest that we don't have the same injury because after the first accident he was given a full duty release. After the second accident there's an obvious change in his medical condition because now he has permanent restrictions of a medium restrictions that prevent him from going back to his usual line of work. There's a definite change in his medical condition. Opposing counsel argues that the testimony from the claimant was as to his condition of ill-being on the day of the arbitration hearing but did his testimony go through the prior history of the first accident, going back to work how he felt then, etc.? He alluded to the fact of the dates could he have gone into greater detail? This Court may certainly have wanted that that's not the facts as presented. Was there testimony about the change in his condition after the second accident compared to the first accident that sort of thing? With respect to that the first accident he testified with respect to his lower back and his legs, how he had some numbness and some problems with that. After the second accident he testified that the numbness in his legs was now constant and ongoing. So he did differentiate in his testimony his medical condition his condition of ill-being. Tell me about his medical bills. With respect to the medical bills I think there was some some of the bills had been paid and parts of the bills that were being submitted had balances on them and there was an entry made on the stipulation sheet there was a feeling by the parties that the bills had been paid pursuant to contract and that there may be some balance bills that are hanging out there. The fact that there were some payments made I think speaks to the question of whether those medical bills were reasonable and necessary. Well that's a paid bill. Now the question becomes on the bills that weren't paid where's the evidence to support the finding that they're reasonable and necessary? Justice there's not going to be anything in the record speaking specifically to the question that you're asking. If there are no further questions we'd ask that the decision of the Commission be affirmed. Hello Yes, Your Honor I would note that the difference and how we can distinguish this from the Beelman case and just based upon the argument by counsel is that that involved an AD loss which is a specific scheduled loss and that's not what we're talking about here we're talking about Section 8D I would note to the Court as Mr. Collins states again that during the trial of this matter they went so far down the line as far as to show that the first injury had resolved that Mr. Collins states in his brief at page 5 that the first injury had resolved itself as far as what condition then we had on the date of hearing. Thank you. The Court will take the matter under advisory participation.